UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v.-

JUAN FRANCISCO CUARTAS VILLEGAS,

Defendant.

21 Cr. 99-1 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:

Defendant Juan Francisco Cuartas Villegas, who is currently housed at
the camp attendant to the Federal Correctional Institution in Atlanta, Georgia
("FCI Atlanta"), has moved for compassionate release, in the form of a reduction
in sentence to time served, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  In support,
Mr. Cuartas Villegas cites medical issues, his conditions of confinement,
changed family circumstances, and his rehabilitation while incarcerated.  The
Government opposes the motion.  As set forth in the remainder of this Order,
the Court denies Mr. Cuartas Villegas's motion.

## BACKGROUND[1]

### A.    Factual Background

This Court has written previously about the charged conspiracy and Mr.
Cuartas Villegas's role within it, in a decision that this Court incorporates by
reference.  *See, e.g.*, *United States* v. *Cuartas Villegas*, No. 21 Cr. 99-1 (KPF),

---

[1]    Mr. Cuartas Villegas's sealed motion for compassionate release is referred to as "Def.
Br."; the Government's sealed opposition is referred to as "Gov't Opp."; Mr. Cuartas
Villegas's sealed reply is referred to as "Def. Reply"; his supplemental reply submission
is referred to as "Def. Supp."; and his Revised Final Presentence Investigation Report
(Dkt. #154) is referred to as "PSR."  References to page numbers refer to the pages of
the PDF version of the cited document.

2024 WL 3535749 (S.D.N.Y. July 25, 2024).  In brief, Mr. Cuartas Villegas used

a ship that he owned, the *Varuna*, to transport more than 500 kilograms of

cocaine from Colombia to the United States behind false walls and other

compartments in the vessel.  Mr. Cuartas Villegas was the master of the vessel,

and as such supervised a crew of three others; he also possessed several

firearms and substantial ammunition.  Furthermore, as a naturalized U.S.

citizen, Mr. Cuartas Villegas was able to operate the *Varuna* as a U.S.-flagged

vessel, thereby reducing the likelihood that it would attract the attention of law

enforcement.

## B.    Procedural Background

### 1.    The Indictment, Plea, and Sentencing

Mr. Cuartas Villegas and three co-conspirators — Pablo Efrain Camero

Bernal, Jose Maria Castillo Berrio, and Jesus Alberto Morelo Castillo — were

initially charged in a complaint with violations of maritime drug enforcement

laws on January 7, 2021.  (Dkt. #1).  An indictment reciting these charges was

returned on February 16, 2021.  (Dkt. #8 (the "Indictment")).  Mr. Cuartas

Villegas and his co-defendants were initially detained in the United States

District Court for the Southern District of Florida before being transferred to

this District (Dkt. #9), where they were presented on June 2, 2021 (Dkt. #27).

On October 28, 2022, Mr. Cuartas Villegas pleaded guilty to Count One

of the Indictment, which charged him with conspiracy to violate the Maritime

Drug Law Enforcement Act, in violation of 46 U.S.C. §§ 70506(b) and

70504(b)(2), and 21 U.S.C. § 960(b)(1)(B).  The plea was entered pursuant to a

written plea agreement with the Government in which the parties stipulated, among other things, to a sentencing range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") of 324 to 405 months' imprisonment.  (PSR ¶ 5).  During the plea proceeding, the Court reviewed the plea agreement with Mr. Cuartas Villegas, including his waiver of his right to appeal or to collaterally challenge any sentence of imprisonment within or below the stipulated Guidelines range.  (Dkt. #67 (plea transcript) at 24-32).  At the conclusion of the proceeding, the Court accepted Mr. Cuartas Villegas's guilty plea.  (*Id.* at 36-37).

In connection with Mr. Cuartas Villegas's sentencing, the Probation Office issued a Presentence Investigation Report (or "PSR") that replicated the Guidelines calculations to which the parties had agreed (PSR ¶¶ 27-37) and recommended a sentence of 200 months' imprisonment (*id.,* Sentencing Recommendation).  During the sentencing proceeding, held on January 23, 2023, the Court heard from counsel and from Mr. Cuartas Villegas before imposing sentence.  (Dkt. #95 (sentencing transcript)).  In determining to vary downwardly from the Guidelines to a term of 200 months, the Court noted in part that:

> I think what has struck me about this offense was the sheer volume involved[.]  I'm not sure I've had a case as a judge with this much cocaine involved, and it is significant to me that it is a U.S. flagship.  As the government noted, it was a privilege [of] Mr. Cuartas Ville[g]as's citizenship that he was able to have a U.S. flagship.  It is disturbing to me that this was done on multiple occasions.  And there is for me a real issue of general deterrence given this amount[,] of respect for the law, of an appreciation of the seriousness of the

offense.  And that is also heightened by the fact that Mr. Cuartas Ville[g]as was the master of the ship and really was the one with the ultimate responsibility for this particular transaction.

But I am also crediting certain of the factors identified by defense counsel.  I'm giving less weight to the proffer statements to the government, but I am giving some weight to the obviously self-incriminating admissions to the coastguard, to some of the statements that he made about his own conduct.  I am as well concerned, and I have been for the past nearly three years, about folks who have been detained during the pandemic and the severity of the conditions and the fact that they are more severe and more difficult than other times in our history.  I am also concerned with the demonstrated and documented health issues that Mr. Cuartas Ville[g]as has, and so I am varying downwardly as both sides have asked me to do.

(*Id.* at 27-28).  Judgment was then entered on February 1, 2023.  (Dkt. #81).

### 2.    The Appeal and the Post-Conviction Motions

In contravention of his plea agreement, Mr. Cuartas Villegas appealed from his sentence.  (Dkt. #84 (notice of appeal)).  Appellate counsel for Mr. Cuartas Villegas moved for permission to withdraw as counsel pursuant to *Anders* v. *California*, 386 U.S. 738 (1967), while the Government moved to dismiss the appeal as barred in part by the waiver of appellate rights contained in the plea agreement and for summary affirmance of the balance of the judgment.  Both motions were granted by the Second Circuit in an order dated August 12, 2024.  (Dkt. #155 (mandate)).

While his appeal was pending, Mr. Cuartas Villegas filed his first motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), citing purported errors in his Guidelines calculations.  (Dkt. #125).  The Court denied

the motion in an order issued on July 25, 2024.  (Dkt. #151).  *See Cuartas Villegas*, 2024 WL 3535749.

On or about December 17, 2024, Mr. Cuartas Villegas filed the instant motion for compassionate release, *pro se* and under seal.  Among other things, Mr. Cuartas Villegas argued that his own medical issues and the worsening condition of his mother warranted a reduction in sentence to time served.  (Def. Br. 4-5, 7-17).  The Government opposed the motion in a sealed submission filed on February 21, 2025, which submission included medical records provided by the Bureau of Prisons (the "BOP").  (Gov't Opp.).  Mr. Cuartas Villegas filed a reply submission on or about May 1, 2025 (Def. Reply), and a supplemental submission on or about September 29, 2025 (Def. Supp.).

## DISCUSSION

### A.    Applicable Law

Under 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018) (the "FSA), a court may reduce a defendant's sentence upon motion of the Director of the BOP, or upon motion of the defendant.  A defendant may move under § 3582(c)(1)(A)(i) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *Id.*

When considering an application under Section 3582(c)(1)(A)(i), a court may reduce a defendant's sentence only if it finds that "extraordinary and

compelling reasons warrant such a reduction," and that "such a reduction is

consistent with the applicable policy statements issued by the Sentencing

Commission."  18 U.S.C. § 3582(c)(1)(A)(i); *see generally United States* v.

*Kimbell,* No. 21-288, 2021 WL 5441249, at *1 (2d Cir. Nov. 22, 2021) (summary

order).  The Second Circuit has summarized the standards pursuant to which

district courts must evaluate compassionate release applications:

> A court deciding a compassionate release motion can
> consider "the full slate of extraordinary and compelling
> reasons that an imprisoned person might bring before
> [it]."  *United States* v. *Brooker,* 976 F.3d 228, 237 (2d
> Cir. 2020).  But there are three requirements that must
> be satisfied before a court can grant such relief.  First,
> absent waiver or forfeiture by the government, an
> inmate must exhaust administrative remedies by
> requesting such relief from prison authorities.
> Specifically, an inmate may ask the sentencing court to
> consider reducing a sentence only "after the defendant
> has fully exhausted all administrative rights to appeal a
> failure of the Bureau of Prisons to bring a motion on the
> defendant's behalf or the lapse of 30 days from the
> receipt of such a request by the warden of the
> defendant's facility, whichever is earlier."  18 U.S.C.
> § 3582(c)(1)(A); *see also United States* v. *Saladino,* 7
> F.4th 120, 124 (2d Cir. 2021) (holding that the
> government may waive or forfeit the exhaustion
> requirement).  Second, a court must "consider[ ] the
> factors set forth in [18 U.S.C. §] 3553(a) to the extent
> that they are applicable."  18 U.S.C. § 3582(c)(1)(A); *see*
> [*United States* v. *Jones,* 17 F.4th 371, 374-75 (2d Cir.
> 2021)].  Section 3553(a), in turn, lists numerous factors
> a court must review when imposing a sentence.  These
> include, as most relevant here, "the nature and
> circumstances of the offense and the history and
> characteristics of the defendant"; "the need for the
> sentence imposed ... to reflect the seriousness of the
> offense, to promote respect for the law, and to provide
> just punishment for the offense"; "the need for the
> sentence imposed ... to provide the defendant with ...
> correctional treatment in the most effective manner";

and "the need to avoid unwarranted sentence
disparities among defendants with similar records who
have been found guilty of similar conduct."  18 U.S.C.
§ 3553(a).  Third, the inmate must demonstrate that his
proffered circumstances are indeed "extraordinary and
compelling" such that, in light of these § 3553(a) factors,
a sentence reduction is justified under § 3582(c)(1)(A)
and would not simply constitute second-guessing of the
sentence previously imposed.

*United States* v. *Keitt*, 21 F.4th 67, 71 (2d Cir. 2021); *accord United States* v.

*Rodriguez*, 147 F.4th 217, 222 (2d Cir. 2025); *United States* v. *Halvon*, 26 F.4th

566, 570 (2d Cir. 2022).  The district court's discretion includes the power to

reduce, as well as to eliminate, the remaining term of a defendant's sentence.

*See Brooker*, 976 F.3d at 237.

The United States Sentencing Commission amended the policy statement

contained at U.S.S.G. § 1B1.13, effective as of November 1, 2023, to provide

guidance as to what constitutes extraordinary and compelling circumstances in

defendant-initiated (as distinguish from BOP-initiated) compassionate release

requests.  This amendment "as to what constitutes extraordinary and

compelling reasons now controls the analysis of a compassionate release

motion, however initiated."  *United States* v. *Lopez*, No. 16 Cr. 317-22 (PAE),

2024 WL 964593, at *2 (S.D.N.Y. Mar. 5, 2024).

As relevant here, courts may consider the medical circumstances of a

defendant, including whether the defendant is (i) "suffering from a serious

physical or medical condition ... that substantially diminishes the ability of the

defendant to provide self-care within the environment of a correctional facility

and from which he or she is not expected to recover," or (ii) "suffering from a

medical condition that requires long-term or specialized medical care" that is
not being provided in prison and without which the defendant is at risk of
serious health deterioration or death.  U.S.S.G. § 1B1.13(b)(1)(B)-(C).  The
amended policy statement also recognizes that family circumstances may
constitute extraordinary and compelling reasons, as, for example, "[t]he
incapacitation of the defendant's parent when the defendant would be the only
available caregiver for the parent."  *See id.* § 1B1.13(b)(3)(C).

　　In addition to the listed factual circumstances, the amended U.S.S.G.
§ 1B1.13 contains a catch-all provision that allows consideration of "any other
circumstance or combination of circumstances that, when considered by
themselves or together with any of the reasons described in paragraphs (1)
through (4), are similar in gravity to those described in paragraphs (1) through
(4)." U.S.S.G. § 1B1.13(b)(5).  Finally, while the amended policy statement
confirms that "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant
is not, by itself, an extraordinary and compelling reason for purposes of this
policy statement," it notes that "rehabilitation of the defendant while serving
the sentence may be considered in combination with other circumstances in
determining whether and to what extent a reduction in the defendant's term of
imprisonment is warranted."  *Id.* § 1B1.13(d).

　　As suggested by *Keitt*, the "existence of 'extraordinary and compelling
reasons' for a reduction does not mean that a district court must release the
defendant." *United States* v. *Madoff*, 465 F. Supp. 3d 343, 349 (S.D.N.Y. 2020).
Even if a court finds that a defendant has established an extraordinary and

compelling reason for a reduction in sentence, it still must then consider the

§ 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A)(i); *see also Rodriguez*, 147

F.4th at 222 ("If the court determines that the § 3553(a) factors weigh against a

sentence reduction, it may deny the motion on that basis alone." (citing *Keitt*,

21 F.4th at 73)). "The burden of showing that the circumstances warrant a

sentence reduction is on the defendant." *United States* v. *Fernandez*, 104 F.4th

420, 427 (2d Cir. 2024) (citing *Jones*, 17 F.4th at 375), *cert. granted in part*, No.

24-556, 2025 WL 1496486 (U.S. May 27, 2025).

## B.    Analysis

The Government does not dispute, for purposes of this motion, that the

exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A)(i) has been satisfied. (*See*

Gov't Opp. 6 (not arguing failure to exhaust)). The Court will therefore proceed

to consider whether Mr. Cuartas Villegas has identified "extraordinary and

compelling reasons" warranting his release. It concludes that he has not.

### 1.    Mr. Cuartas Villegas Has Failed to Present an Extraordinary and Compelling Reason for Compassionate Release

#### a.    Mr. Cuartas Villegas's Medical Issues

The Court begins with Mr. Cuartas Villegas's claims regarding the

conditions of his confinement and their interaction with his medical conditions,

in which category he includes heart disease, hypertension, hyperlipidemia, and

a gluten allergy. On this issue, the Court agrees with the Government that Mr.

Cuartas Villegas has failed to present evidence sufficient to demonstrate a

"terminal illness"; a "serious physical or medical condition ... that substantially

diminishes the ability of the defendant to provide self-care within the

environment of a correctional facility and from which he ... is not expected to recover"; or a "medical condition that requires long-term or specialized medical care" that his detention facility cannot provide, and the absence of which risks his "serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1) (explaining that these factors constitute extraordinary and compelling reasons). (*See* Gov't Opp. 6).

"Even assuming [Mr. Cuartas Villegas's] conditions require long-term or specialized care, the presence of a health condition requiring long-term or specialized care does not by itself establish an extraordinary and compelling circumstance warranting a sentence reduction" without evidence that "the BOP is unable to care for an inmate with those conditions." *United States* v. *Radulescu*, No. 19 Cr. 651 (SHS), 2024 WL 4200388, at *1 (S.D.N.Y. Sept. 16, 2024). This Court has reviewed with care Mr. Cuartas Villegas's BOP medical records for the past two years, which records make clear that he is receiving adequate care for his medical conditions on a regular basis. As a measure of added protection, the Court has communicated to the BOP's Northeast Regional Counsel its expectation that Mr. Cuartas Villegas will be "top of mind" for the medical staff at FCI Atlanta.

With particular respect to Mr. Cuartas Villegas's heart condition, the Court was aware of it at sentencing and, indeed, predicated part of its downward variance on that condition. The medical records provided to the Court make clear that the BOP has provided adequate care with respect to Mr. Cuartas Villegas's heart condition, including by taking him to local hospitals

for observation or treatment as appropriate.  These records also confirm that the BOP has prescribed medications for Mr. Cuartas Villegas's hypertension and hyperlipidemia.  And the Court will not find an extraordinary and compelling reason for immediate release from custody in Mr. Cuartas Villegas's professed difficulties in maintaining a gluten-free diet while incarcerated.

### b.    Mr. Cuartas Villegas's Parental Issues

Mr. Cuartas Villegas also notes that his mother, Ariana V. Cuartas, is experiencing various age-related medical issues, including memory loss and confusion, mobility issues caused by problems with her knees, and difficulty "performing day to day errands." (Def. Br. 12).  Mr. Cuartas Villegas notes that Ms. Cuartas currently resides on a two-acre property in a house built in 1896, and proposes to live with his wife at that property, and thereby care for both his mother and her house.  (*Id.*).  To be sure, the Court is saddened to learn of Ms. Cuartas's medical issues.  However, Mr. Cuartas Villegas has failed to demonstrate that he is "the only available caregiver" for his mother.  In particular, given Ms. Cuartas's willingness to compensate Mr. Cuartas Villegas $3,000 per month for his efforts, it appears that Mr. Cuartas Villegas's wife, who has volunteered to move with him to Ms. Cuartas's house, could handle these responsibilities, or that Ms. Cuartas could hire a home health care aide to assist her.[2]  *See United States* v. *Pilitz,* No. 17 Cr. 53 (JS), 2025 WL 2324218, at *5 (E.D.N.Y. Aug. 12, 2025) (collecting cases where district courts

---

[2]    Currently, Mr. Cuartas Villegas's wife visits his mother for 15 days every three months, during which she assists with household chores. (*See* Def. Br. 34 (letter from Fanny Andrea Cepeda Romero)).

11

have accepted, and rejected, claims that a defendant is the only available

caregiver for a parent); *United States* v. *Sanchez*, No. 01 Cr. 74-2 (PAC), 2023

WL 7103277, at *6 (S.D.N.Y. Oct. 27, 2023) ("While the external commitments

of Sanchez's family members might make caretaking difficult, that is 'merely

the inevitable circumstances families face when a family member is

incarcerated,' not an extraordinary and compelling reason to reduce a

sentence." (internal citations omitted)), *aff'd*, No. 23-7777, 2024 WL 4647668

(2d Cir. Nov. 1, 2024) (summary order); *cf. United States* v. *Lisi*, 440 F. Supp.

3d 246, 251-52 (S.D.N.Y. 2020) (finding extraordinary and compelling

circumstances where "the Court received evidence from several sources,"

including from "[the defendant], his mother, and numerous others," indicating

that the defendant is "the only available caregiver for his mother," but denying

§ 3582(c)(1)(A)(i) motion based on analysis of sentencing factors).

As further support for his motion, Mr. Cuartas Villegas includes

information about his rehabilitative efforts in prison, including the hundreds of

hours of programming he has taken and his own work in educating others;

these efforts, he contends, show the productive use that he has made of his

time in prison, and the inutility of additional time. (*See, e.g.*, Def. Br. 35-54

(class records and character statements)). These efforts are commendable, and

the Court is pleased to see the productive manner in which Mr. Cuartas

Villegas has spent his time in prison. As noted, however, rehabilitation is not,

by itself, sufficient to constitute an extraordinary and compelling circumstance,

though "rehabilitation of the defendant while serving the sentence may be

12

considered in combination with other circumstances in determining whether

and to what extent a reduction in the defendant's term of imprisonment is

warranted."  U.S.S.G. § 1B1.13(d); *see also* 28 U.S.C. § 994(t) ("Rehabilitation

of the defendant alone shall not be considered an extraordinary and compelling

reason.").  Here, the Court finds that Mr. Cuartas Villegas's proffered bases for

relief, individually or in combination, do not amount to extraordinary and

compelling reasons for his release, and it will not grant his motion based on his

rehabilitation alone.  *Cf. United States* v. *Muyet*, No. 95 Cr. 941 (LAP), 2024 WL

2830825, at *5 (S.D.N.Y. June 3, 2024) ("Simply put, the evidence of

rehabilitation offered by Defendant does not, alone or in combination with all

other relevant considerations, establish extraordinary and compelling reasons

for a reduction in his sentence."); *United States* v. *Raposo*, No. 98 Cr. 185

(JPC), 2024 WL 165195, at *9 (S.D.N.Y. Jan. 16, 2024) ("And given the Court's

findings that [the defendant's] other arguments do not constitute extraordinary

and compelling reasons, even evidence of complete rehabilitation cannot

suffice.").

### 2.     The Section 3553(a) Factors Counsel Against Compassionate Release

Finally, even if the Court were to find that either or both of Mr. Cuartas

Villegas's proffered bases for compassionate release were "extraordinary and

compelling," it would still deny his motion after considering the factors set forth

in 18 U.S.C. § 3553(a).  These factors include "the nature and circumstances of

the offense and the history and characteristics of the defendant," as well as the

needs "to reflect the seriousness of the offense, to promote respect for the law,

and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C).

Mr. Cuartas Villegas bought a boat that he specifically modified to facilitate the importation of large quantities of drugs into the United States. The shipment with which he was caught involved more than 500 kilograms of cocaine, with a wholesale value in excess of $12 million. Mr. Cuartas Villegas also possessed firearms and ammunition in connection with his drug trafficking. Despite the fact that both sides agreed on a Guidelines range of 324 to 405 months' imprisonment, the Court varied downward dramatically, imposing a term of 200 months' imprisonment, of which Mr. Cuartas Villegas has served less than four years. For the Court to impose a further reduction in sentence would contravene the Section 3553(a) factors that the Court strove so carefully to balance at the original sentencing. It declines to do that.

## CONCLUSION

For the reasons set forth in this Order, the Court denies Mr. Cuartas Villegas's motion for compassionate release. The Clerk of Court is to mail a copy of this Order to Mr. Cuartas Villegas at the following address:

> Juan Francisco Cuartas Villegas
> Reg. No. 21134-104
> FCI Atlanta
> Federal Correctional Institution
> P.O. Box 150160
> Atlanta, GA   30315

SO ORDERED.

Dated:  October 8, 2025
        New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge